IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JORDAN WALKER, | ) |
| Plaintiff, | ) |
| | ) No. 3:21-cv-00010 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| C. YOUKER, *et al*., | ) MAGISTRATE JUDGE FRENSLEY |
| Defendants. | ) |

## MEMORANDUM OPINION

Plaintiff Jordan Walker, an inmate of the Bledsoe County Correctional Complex in Pikeville, Tennessee, filed this pro se, in forma pauperis action against eleven Defendants, alleging they violated his civil rights while he was in the custody of the Williamson County Sheriff's Office. (Doc. No. 1). The named Defendants are C. Youker, C. Gray, C. Ricciardi, K, Spry, J. Mailia, M. Conner, K. Wells, J. Floyd, A. Gifford, S. Luther, and the Williamson County Sheriff's Office. (*Id*.)

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

### I. PLRA SCREENING STANDARD

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id*. § 1915A(a), and

1

summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II. SECTION 1983 STANDARD

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

## III. ALLEGED FACTS

The complaint sets forth a number of allegations pertaining to Plaintiff's confinement at the Williamson County Jail in Franklin, Tennessee. The following are the facts alleged in the complaint.

On November 10, 2019, Plaintiff's cell mate threatened him and threw a bed at corrections staff. Corporal Ricciardi claimed that the cell mate had "calmed down" and required Plaintiff to return to his cell, but Plaintiff did not feel safe and refused. (Doc. No. 1 at 3). Deputy Bedford and Corporal Ricciardi then unsuccessfully "tried to use force" to place Plaintiff into his cell. (*Id.*) Corporal Spry, Deputy Bedford, Deputy Gifford, and Corporal Ricciardi tried to take Plaintiff "upstairs [but] it didn't work" so Corporal Spry placed Plaintiff in the restraint chair and on property restriction again. (*Id.*) Plaintiff sought to be placed in protective custody, and his request was denied. (*Id.* at 7).

Unlike other inmates on suicide watch, Plaintiff has been put in the "restraint chair" several times while on suicide watch. (*Id.* at 2).

On February 12, 2020, Sergeant Mailia placed Plaintiff on "property restriction" for passing an item to another inmate, which Plaintiff claims was toilet paper. (*Id.*) On February 17, 2020, when Plaintiff's property was returned to him after "property restriction," several items were missing. (*Id.*) On February 28, 2020, when Plaintiff received his property back from a separate "property restriction," several items were missing. (*Id.* at 5).

Plaintiff was not permitted by Corporal Simoneax and Lieutenant Youker to take a shower on February 24, 2020. (*Id.* at 2, 7).

On April 1, 2020, Plaintiff did not receive enough food for dinner. Plaintiff complained about the amount of food and covered his security camera. Sergeant Mailia instructed Plaintiff to uncover the camera and step back to the wall. When Plaintiff failed to comply, Corporal Spry, Corporal Ricciardi, Deputy Johnson, and Sergeant Mailia tried to restrain Plaintiff but "it didn't work." (*Id*. at 4). Sergeant Mailia then tasered Plaintiff and an unidentified individual placed Plaintiff in the restraint chair. Sergeant Gray placed Plaintiff on a "2 deputy present", which means that two deputies must stay with Plaintiff at all times. (*Id*.) Regarding this incident, Corporal Spry and Corporal Ricciardi lied in the incident report, "saying [Plaintiff] assaulted them." (*Id*.)

On April 12, 2020, during a verbal incident between Plaintiff and officers, either Corporal Ricciardi or Deputy Conner[1] told Plaintiff, "If you take one step I'm going to dump you on your head." (*Id*. at 5). Plaintiff responded, "If you touch me it's going down in this bitch." (*Id*.) Corporal Ricciardi tried to fight Plaintiff but Deputy Conner restrained Corporal Ricciardi.

On April 14, 2020, Deputy Floyd and Sergeant Mailia cuffed Plaintiff after he expressed suicidal intentions. Deputy Floyd lied to the psych nurse Andrea l/n/u and told her that Plaintiff had stated he was going to jump off the top bunk. (*Id*. at 2).

On November 24, 2020, Plaintiff sought permission from Sergeant Wells to make a telephone call to his sister who had COVID. (*Id*. at 6). Sergeant Wells did not respond until December 7, 2020, asked Plaintiff whether he still needed to make the call, and instructed him that he would need to ask the floor Sergeant for permission to make the call. On December 8, 2020, Sergeant Bennett would not permit Plaintiff to call his sister when she had COVID because Plaintiff was on "Ad-seg." (*Id*.)

---

[1] It is unclear from the complaint which officer allegedly made this statement. (Doc. No. 1 at 5).

Lieutenant Youker and Sergeant Luther did not respond to Plaintiff's grievances. (*Id*. at 5).

## IV. ANALYSIS

The complaint alleges a number of claims against ten individual Defendants and one entity Defendant. The Court will address each claim in turn.

A. <u>CLAIMS AGAINST THE WILLIAMSON COUNTY SHERIFF'S OFFICE</u>

First, Plaintiff names the Williamson County Sheriff's Office as a Defendant to this action. However, a police or sheriff's department is not an entity capable of being sued under 42 U.S.C § 1983. *See, e.g.*, *Durham v. Estate of Gus Losleben*, No. 16-1042-STA-egb, 2017 WL 1437209, at \*2 (W.D. Tenn. Apr. 21, 2017); *McKinney v. McNairy Cnty., Tenn.*, 1:12-CV-01101, 2012 WL 4863052, at \*3 (W.D. Tenn. Oct. 11, 2012); *Newby v. Sharp*, 3:11-CV-534, 2012 WL 1230764, at \*3 (E.D. Tenn. Apr. 12, 2012); *Mathes v. Metro. Gov't of Nashville and Davidson Cnty.*, No. 3:10-CV-0496, 2010 WL 3341889, at \*2 (M.D. Tenn. Aug. 25, 2010). Thus, the complaint fails to state claims upon which relief can be granted under Section 1983 against the Williamson County Sheriff's Office. These claims will be dismissed.

B. <u>FAILURE TO PROTECT</u>

The complaint alleges that, on November 10, 2019, Defendant Corporal Ricciardi failed to protect Plaintiff from harm, by requiring him to reenter his cell while his cell mate was behaving in a violent manner and threatening him. (Doc. No. 1 at 3). The complaint further alleges that Plaintiff requested to be placed in protective custody but that an unidentified person denied his request. (*Id*. at 7).

The Eighth Amendment to the United States Constitution requires officers to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825,

5

Case 3:21-cv-00010   Document 11   Filed 05/03/21   Page 5 of 18 PageID #: 67

832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)). Although prison officials have a duty to protect prisoners from assault by other prisoners, the Supreme Court has recognized that jail and prison officials cannot be expected to prevent every assault before it occurs or to stop every assault in progress before injuries are inflicted. Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. That is, the inmate must show both that the risk of harm is sufficiently "serious," an objective inquiry, and that prison officials acted with "deliberate indifference" to inmate health or safety, a subjective inquiry. *Id*. at 837-38; *Helling v. McKinney*, 509 U.S. 25, 32 (1993). Thus, "a prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

The statute of limitations for a Section 1983 action is the "state statute of limitations applicable to personal injury actions under the law of the state in which the § 1983 claims arises." *Eidson v. Tenn. Dep't of Children's Servs*., 510 F.3d 631, 634 (6th Cir. 2007). The limitations period for Section 1983 actions arising in Tennessee is the one-year limitations provisions found in Tennessee Code Annotated § 28-3-104(a). *Porter v. Brown*, 289 F. App'x 114, 116 (6th Cir. 2008). "[T]he accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). Claims accrue and the statute of limitations period begins to run when the plaintiff knows or has reason "to know of the injury which is the basis of his action." *Roberson v. Tenn*., 399 F.3d 792, 794 (6th Cir. 2005). This inquiry is objective, and courts look "to what event should have alerted the typical layperson

to protect his or her rights." *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000). It is the court's responsibility to "determine whether the alleged precipitating event or events occurred more than a year before [the plaintiff] filed the complaint. . . ." *Standridge v. Tenn. Dep't of Children's Servs.*, No. 3:08-CV-133, 2009 WL 348782, at *7 (E.D. Tenn. Feb. 10, 2009).

Here, the events about which Plaintiff complains occurred on November 20, 2019. Plaintiff therefore had one year from that date, or until November 21, 2020, to raise any Section 1983 claims pertaining to those events. The Court received the complaint on January 7, 2021.[2] Because Plaintiff brought his failure to protect claims after the expiration of the governing one-year statute of limitations, this claim must be dismissed.[3]

C. EXCESSIVE FORCE

The complaint alleges that Plaintiff was the victim of excessive force on five occasions: on November 19, 2019 (Doc. No. 1 at 3) when Corporal Ricciardi and Deputy Bedford attempted to return Plaintiff to his cell; on April 12, 2020, when Corporal Ricciardi tried to fight Plaintiff but Deputy Conner restrained Corporal Riccardi (*id*. at 5); at several unspecified times when an unspecified person or persons placed Plaintiff in the "restraint chair" while he was on suicide watch; (*id*. at 2); on April 1, 2020, when Corporal Spry, Corporal Ricciardi, Deputy Johnson, and Sergeant Mailia tried to restrain Plaintiff but "it didn't work" and Sergeant Mailia tasered Plaintiff

---

[2] When initially filed as of that date, the complaint was not signed or dated.

[3] Even if Plaintiff had filed this claim within the governing limitations period, the claim still would be subject to dismissal. He failed to allege that the risk of harm was sufficiently serious and that Defendant Corporal Ricciardi acted with deliberate indifference to Plaintiff's health or safety. The complaint alleged that, when Corporal Ricciardi instructed Plaintiff to return to his cell, Ricciardi believed that Plaintiff's cell mate had calmed down. Moreover, the complaint does not allege that Plaintiff's cell mate harmed him then or on a later date.

7

and placed him in the restraint chair (*id*. at 4); and, on April 14, 2020, when Deputy Floyd and Sergeant Mailia cuffed Plaintiff after he expressed suicidal intentions. (*Id*).

From the complaint, it is unclear whether Plaintiff was a convicted prisoner or pre-trial detainee at the time of the alleged uses of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision. "The Supreme Court has . . . clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'" *Coley v. Lucas Cnty., Ohio,* 799 F.3d 530, 538-39 (6th Cir. 2015) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)). Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011)).

First, as the Court noted above, Plaintiff's claims regarding events that occurred outside of the governing one-year statute of limitations for Section 1983 claims must be dismissed. Deputy Bedford and Corporal Ricciardi's alleged use of excessive force when trying to return Plaintiff to his cell by on November 10, 2019, falls outside of the one-year limitations period.

Second, Plaintiff's allegation that Corporal Ricciardi tried to fight, but did not fight, Plaintiff on April 12, 2020, does not state a claim of excessive force under the standard for either a pre-trial detainee or a convicted prisoner. Plaintiff does not allege that any force was used.

8

Third, the complaint alleges that, after Plaintiff complained that he did not receive enough food for dinner, he covered his security camera. When Sergeant Mailia instructed Plaintiff to uncover the camera and step back to the wall, Plaintiff refused. Only after Plaintiff failed to comply with an express directive did Corporal Spry, Corporal Ricciardi, Deputy Johnson, and Sergeant Mailia attempt to restrain Plaintiff and, as Plaintiff himself concedes, "it didn't work." (Doc. No. 1 at 4). Sergeant Mailia then tasered Plaintiff and placed him in the restraint chair. At this time Plaintiff was actively resisting the officers' commands and posing a threat to the officers' safety. In addition, covering the security camera in his cell posed a risk to Plaintiff's own safety, particularly considering that he had a history of suicidal ideation. Defendants' actions under the circumstances described do not state colorable claims of excessive force under the standard for either a pre-trial detainee or a convicted prisoner.

Finally, the complaint does not allege facts plausibly suggesting that the use of the restraint chair or cuffs, under the circumstances presented, was objectively unreasonable. The complaint acknowledges that Plaintiff was either actively resisting officers or on suicide watch—after having expressed suicidal ideations—when was placed in the restraint chair. The complaint does not allege that Plaintiff was kept in the restraint chair for an unreasonable amount of time or that he suffered any harm as a result of being restrained in the chair. Further, the complaint details several incidents during which Plaintiff responded to jail officials' express directives with noncompliance and force, supporting the need for Plaintiff to be restrained for the safety of the prison officials. *See Ortiz v. Jefferson County, Tenn.*, No. 3:17-cv-00401, 2019 WL 5932757, at *8 (E.D. Tenn. Nov. 12, 2019) (finding that inmate's allegation that the use of restraint chair for over three hours, in excess of the two-hour limit mandated by county policy, failed to state a colorable excessive

9

force claim where plaintiff failed to allege any basis to find the use of restraint chair objectively unreasonable); *Beyer ex rel. Estate of Beyer v. City of Johnson City, Tenn.*, No. 2:02-CV-45, 2003 WL 23737298, at *5-6 (E.D. Tenn. Feb. 24, 2003) (finding that "[t]he acquisition and use of the restraint chair, unquestionably, was meant for inmate protection", "was for the safety of inmates and, if the prisoner was violent, of jailers" and "the savings of lives and lawsuits by taking firm measures to eliminate jailhouse suicides is certainly a valid penological and medical purpose."). "The short-term, relatively comfortable restraint of a person who poses a suicide risk until a mental health professional can evaluate that risk is not unconstitutional." *Beyer*, 2003 WL 23737298, at *6. Thus, the complaint fails to state excessive force claims upon which relief be granted under Section 1983.

D. <u>LOSS OF PROPERTY</u>

Next, the complaint alleges that Plaintiff's property was taken or lost on two separate occasions (February 17, 2020 and February 28, 2020) while he was in the custody of the Williamson County Sheriff's Office. The Due Process Clause of the Fourteenth Amendment protects against the unlawful taking of a person's property by public officers. However, the Supreme Court has held that, where adequate remedies are provided by state law, allegations of the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *overruled on other grounds by Daniel v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

The Sixth Circuit Court of Appeals has held that Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either

10

negligently or intentionally converted. *See Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985). Plaintiff has not alleged that he attempted post-deprivation remedies and that they were inadequate. The complaint alleges only that Plaintiff brought the missing items to the attention of several officers and filed written grievances regarding the matter to facility officials. Thus, because there appear to be adequate state post-deprivation remedies available to Plaintiff, this claim will be dismissed.

E. FAILURE TO RESPOND TO GRIEVANCES

The complaint alleges that Defendants Youker and Luther failed to respond to Plaintiff's grievances. (Doc. No. 1 at 5). However, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for Section 1983 liability based on the alleged actions complained of. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation."). *See Rizzo v. Goode*, 423 U.S. 362, 371 (1976) (to establish the liability of any individual defendant, the plaintiff must show that that particular defendant was personally involved in the activities giving rise to the plaintiff's claims); *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior"); *Murphy v. Grenier*, 406 F. App'x 972, 974 (6th Cir. 2011) ("Personal involvement is necessary to establish section 1983 liability."). Thus, Plaintiff's grievance-based claims against Lieutenant Youker and Sergeant Luther must be dismissed.

F. HYGIENE

11

Next, the complaint alleges that Corporal Simoneaz and Lieutenant Youker prohibited Plaintiff from taking a shower on February 24, 2020. (Doc. No. 1 at 2, 7). True, a prisoner may not be denied his basic needs, including hygiene. *Estelle*, 429 U.S. at 104. Yet, "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The complaint alleges neither that Plaintiff has been denied a shower on other occasions, nor that Plaintiff was harmed by being denied the opportunity to shower on a single occasion. For these reasons, this allegation fails to state colorable claim under the Eighth Amendment and will be dismissed.

G. <u>INSUFFICIENT FOOD</u>

The complaint alleges that, on April 1, 2020, Plaintiff did not receive enough food for dinner. (Doc. No. 1 at 4). Under the Eighth Amendment, state officials are required to provide prisoners with adequate food. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). Depriving an inmate of food establishes grounds for a violation of the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S 337, 348 (1981). But in this regard, the Eighth Amendment requires only that inmates be provided "'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986) (quoting *Smith v. Sullivan*, 553 F.2d 373, 380 (5th Cir. 1977)) (footnotes omitted). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Wilson*, 501 U.S. 294, 298.

The complaint alleges that Plaintiff received inadequate food on one occasion. The complaint does not allege that Plaintiff suffered any harm as a result. For example, the complaint does not allege that Plaintiff lost significant weight while in the custody of the Williamson County Sheriff's Office or is suffering from any health problems as a result of an allegedly inadequate diet provided by Williamson County staff. As such, the complaint's allegations fail to state an Eighth Amendment claim upon which relief can be granted.

H. VERBAL THREATS

The complaint alleges that, on April 12, 2020, during a verbal incident between Plaintiff and officers, either Corporal Ricciardi or Deputy Conner[4] told Plaintiff, "If you take one step I'm going to dump you on your head." (Doc. No. 1 at 5). However, allegations of verbal harassment and verbal abuse by jail officials toward an inmate do not constitute cruel and unusual punishment within the meaning of the Eighth Amendment, and thus do not rise to a constitutional violation. *See e.g., Jones Bey v. Johnson*, 248 F. App'x 675, 677-78 (6th Cir. 2007) (finding no Eight Amendment violation for prison guard's "use of racial slurs and other derogatory language"); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) ("harassment and verbal abuse . . . do not constitute the type of infliction of pain that the Eighth Amendment prohibits"); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001) ("Allegations of verbal harassment and verbal abuse by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. Nor do allegations of verbal harassment raise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment."); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987) (per curiam) (holding that verbal abuse or harassment does not constitute punishment under the Eighth Amendment).

Thus, with respect to either Corporal Ricciardi or Deputy Conner's verbal threats toward Plaintiff on one occasion, the complaint fails to state an Eighth Amendment cruel and unusual punishment claim upon which relief can be granted, and this claim will be dismissed.

---

[4] It is unclear from the complaint which officer allegedly made this statement. (Doc. No. 1 at 5).

I. LYING IN INCIDENT REPORT

The complaint alleges that Corporal Spry and Corporal Ricciardi lied in the incident report about what happened on April 1, 2020, "saying [Plaintiff] assaulted them." (Doc. No. 1 at 4). "[P]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citing *Morrissey v. Brewer*, 408 U.S. at 411, 480 (1972)). Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner*, 474 U.S. 193 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill*, 472 U.S. 445, 455-56 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager).

In *Wolff v. McDonnell*, the Supreme Court held that when a prisoner is charged with a disciplinary offense that may result in loss of good time credit, (procedural) due process requires (i) written notice of the charges at least twenty-four hours prior to the hearing; (ii) the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals[;]" and (iii) a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action. 418 U.S. 539, 563-64, 566. These protections are required only when a liberty interest is at stake. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 484, 486-87 (1995). "A prison disciplinary proceeding does not give rise to a protected liberty interest unless the restrictions imposed constitute an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (quoting *Sandin*, 515 U.S. at 484); *see Upshaw v. Jones*, No. 14-2534-JDT-tmp, 2015 WL 348626, at *4 (W.D. Tenn. Jan. 26, 2015)

(finding no violation of inmate's due process rights when corrections officer assigned inmate to segregation as punishment prior to inmate's disciplinary hearing).

Here, the complaint fails to allege that the punishment Plaintiff received, or the consequences he endured, as a result of Corporal Spry and Corporal Ricciardi's purported lies imposed an atypical and significant hardship sufficient to violate due process. *See Sandin*, 515 U.S. 472, 484-86. The complaint does not identify what punishment Plaintiff received, or what consequences ensued, as a result of Defendants' alleged lies in the incident report. Simply stated, the complaint sets forth no facts demonstrating that Plaintiff had a liberty interest in the outcome of a disciplinary hearing, such as a loss of sentence credit.

To the extent that Plaintiff argues that he has the right to prove his innocence, the disciplinary infraction about which Plaintiff complains is not the equivalent of a state or federal criminal charge against him. "The constitutional adequacy of these [prison disciplinary] proceedings is not to be measured by the requirements of a criminal prosecution, for the full panoply of procedural due process rights do not apply to the administration of prison discipline." *Brooks v. Westbrooks*, No. 3:17-cv-00686, 2017 WL 3868275, at *3 (M.D. Tenn. Sept. 5, 2017) (quoting *Crafton v. Luttrell*, 378 F. Supp. 521, 526 (M.D. Tenn. 1973) (citations omitted)). The complaint fails to state due process claims under Section 1983 upon which relief can be granted. These claims will be dismissed.

J. INABILITY TO TELEPHONE FAMILY MEMBER

Finally, the complaint alleges that, on December 8, 2020, Sergeant Bennett would not permit Plaintiff to call his sister when she had COVID because Plaintiff was on "Ad-seg." (Doc. No. 1 at 6).

While prisoners retain the right to communicate with friends, family, and counsel while in prison, they do not have a right to unlimited telephone calls. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir.1994). "Instead, a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Id*. (internal punctuation and citations omitted). Here, the complaint alleges that Plaintiff was denied the opportunity to make a single telephone call to his sister because he was on administrative segregation.

An inmate does not have a liberty interest in a particular security classification or in freedom from segregation. *Miller v. Campbell*, 108 F. Supp.2d 960, 963 (W.D. Tenn. 2000)(citations omitted). Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 467-73 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010).

Construed liberally, the pro se complaint alleges that Plaintiff's placement in administrative segregation subjects him to stricter restrictions on telephone communication than inmates who are not housed in segregation. According to Plaintiff, these conditions constitute "an atypical hardship." However, the Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008). As the Supreme Court explained in *Overton v. Bazzetta*, 539 U.S. 126 (2003), some curtailment of the freedom to associate with

17

family and friends is expected in the prison setting. *Id*. at 132. The Court finds that Plaintiff has not demonstrated that his inability to telephone his sister on one occasion unreasonably restricted or impaired the Plaintiff's constitutional right to communicate with family and friends. This claim therefore must be dismissed.

## V. CONCLUSION

It may be that, if the allegations of the complaint are true, Plaintiff was subjected to certain circumstances that were not ideal from his perspective, or even from an objective perspective. But that does not necessarily mean that the (alleged) circumstances plausibly suggest one or more constitutional violation(s). To the contrary, many circumstances that would naturally be undesirable and frustrating from the perspective of a typical prisoner do not rise to the level of unconstitutional treatment. Such is the case here.

Having screened the complaint pursuant to the PLRA, the Court finds that the complaint fails to state any claims under Section 1983 upon which relief can be granted as to any Defendant, and this action must be dismissed. 28 U.S.C. § 1915A.

An appropriate Order will be entered.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE